### THE FEARLESS.

(District Court, D. New Jersey. February 5, 1925.)

Maritime liens ⊘65—Evidence held to show coal was not furnished to a vessel, so as to entitle seller to maritime lien on her, though, after being sold to owner, it was used on her (Comp. St. §§ 7783–7787).

That coal was not "furnished to a vessel," within Act June 23, 1910 (Comp. St. §§ 7783–7787), so as to give maritime lien on her, though it was applied in toto to her uses and purposes, but was sold in general course of business to her owner, without reference to any particular vessel, *held* shown by the evidence.

In Admiralty. Libel by the Franklin Fuel Company against the steamer Fearless; Leon G. Buckwalter, receiver of the Gloucester Ferry Company, claimant. Libel dismissed.

Decree affirmed, 14 F.(2d) 1006.

Richard Stockton, 3d, of Trenton, N. J., and W. Logan MacCoy, of Philadelphia, Pa., for libelant.

Norman Grey, of Camden, N. J., and R. W. Archbald, Jr., of Philadelphia, Pa., for respondent.

RUNYON, District Judge. The libel herein claims that on or about September 25, 1922, the libelant, through its agent, contracted with the agent of the Gloucester Ferry Company for the sale and delivery to the steamer Fearless of 215 gross tons of bituminous coal, at an agreed price of $5.04 per gross ton, f. o. b. mines; further, that on September 30, 1922, pursuant to said contract, the libelant delivered to said Fearless the coal in question at an expense of $32.25 for freight; furthermore, that on or about October 10, 1922, the same parties, through their respective agents, entered into an oral contract, whereby the libelant agreed to sell and deliver to the said Fearless 259 gross tons of bituminous coal, at an agreed price of $4.48 per gross ton, f. o. b. mines, and that pursuant thereto the libelant delivered the coal in question to the Fearless on October 16, 1922, at an expense of $38.85 for freight.

The libelant therefore claims the total sum of $2,985.83 as due and owing to it by reason of said contracts, and further claims its right to a maritime lien upon the said steamer Fearless under authority of Act June 23, 1910, c. 373, 36 Statutes at Large (Comp. St. §§ 7783–7787). The respondent, while admitting sales and deliveries of the amounts of coal claimed by the libelant, yet denies that the libelant agreed to sell and deliver the coal in question to the Fearless, but, on the contrary, agreed to sell and deliver the same to the Gloucester Ferry Company on its personal credit, and without reference to the Fearless or any other vessel.

This contention is advanced both by the Gloucester Ferry Company, the owner of the Fearless, and by Leon G. Buckwalter, the receiver of said ferry company. The testimony and exhibits show the following as undisputed facts:

The libelant's invoices, by their written terms, show the coal as sold to the Gloucester Ferry Company and as charged to said company. The bill of lading issued in connection with the transportation of the coal from Port Richmond likewise shows the shipment as made to the ferry company. The actual delivery of the coal was at the

ferry company's docks and into bins maintained there by said company.

There was other coal in said bins at the time, and libelant's coal was dumped on top of that coal in the instance of the first sale and delivery, and, when the second delivery was made, libelant's coal was dumped on top of such coal as there remained in the bins. Inasmuch as the hold of the ferryboat held comparatively little coal, it was the practice to haul a round trip's supply from the bins to the boat as occasion required; a horse and cart being used for that purpose. During the early part of November, 1922, a small portion of the coal in the bins was used to heat the ferry company's waiting room, and 4 tons thereof sold to the Welsbach Company.

The authority invoked in behalf of the libel herein, as already stated, rests in the act of 1910 (chapter 373, 36 Statutes at Large), the first section of which states:

"That any person furnishing repairs, supplies, or other necessaries, including the use of dry dock or marine railway, to a vessel, whether foreign or domestic, upon the order of the owner or owners of such vessel, or of a person by him or them authorized, shall have a maritime lien on the vessel which may be enforced by a proceeding in rem, and it shall not be necessary to allege or prove that credit was given to the vessel."

This section having eliminated the necessity of proving any credit as having been given to the vessel, the only question to be decided is as to whether or not the coal contracted for between the representatives of the Franklin Fuel Company and the Gloucester Ferry Company was *furnished "to a vessel"*—the "Fearless"—or was sold to the Gloucester Ferry Company, without reference to any special vessel, and in the ordinary course of business.

Upon this point there are differences in the testimony. Mr. Bishop, in behalf of the libelant, asserts that his negotiations with Mr. Waters, of the ferry company, were for the sale of coal to the ferry company for the Fearless; that, while the boat's name was not mentioned, Mr. Waters did urge the fuel company to hurry, saying that, if coal were not soon delivered, their boat would be tied up. On the other hand, Mr. Waters, the representative of the ferry company, testifies that the coal was ordered by him for his company, and gives it to be understood that such sale was for the company's general use, and not for delivery to a specific vessel.

In view of this situation, a solution must be attempted along other lines. There is apparently no doubt but that the Fearless, during the period here involved, consumed more tons of coal out of the company's bins on the dock than were there delivered by the fuel company, and, were this a mere action for goods sold and delivered, there could be no just defense offered to libelant's claim.

But, inasmuch as the relief here sought must be obtained, if at all, upon a showing of compliance with the requirements of a statute which, upon specific terms, establishes an unusual preferential lien, we are confronted with a largely different problem. And since the allowance of such a lien involves possibly, and perhaps seriously, the status of other creditors, it follows, of course, that the right to avail of the benefits of the statute must be clearly demonstrable, and not in anywise a matter of inference or conjecture.

In the history of this whole proceeding, so far as any acts, overt or otherwise, are concerned, I am unable to find anything whatever which the libelant did, or omitted to do, subsequent to the telephonic orders for coal, which in any wise corroborates Mr. Bishop's testimony that the coal was ordered for the Fearless. And even Mr. Bishop frankly admits that the boat's name was not mentioned when the orders were given.

On the other hand, the testimony given through the coal company's invoices and the bill of lading, the fact that the coal was dumped in the ferry company's bins with other coal, the entire lack of anything of a documentary nature, either in the coal company's books or otherwise, to show that this coal was sold for use by the Fearless, all combine to stamp the sales as having been made in the general course of business to the Gloucester Ferry Company, and as not having reference to any particular vessel. And as I view the matter, no cure lies in the fact that the coal may have been actually applied in toto to the uses and purposes of the Fearless, as in all probability was the case.

If the libelant's right to a maritime lien cannot rest in part upon the circumstances attendant upon the character and intent of the original orders, it cannot be brought into being through subsequent appropriation to a specific purpose.

"If the goods are furnished to the vessel in good faith, the materialman is not answerable for their misapplication; * * * If not furnished to the vessel, their subsequent use thereon will not create a lien as the furnisher's right to a lien aris-

es, if at all, from what occurred at the time the supplies were ordered or furnished, not from what may have been subsequently done in regard thereto." The Cora P. White (D. C.) 243 Fed. 246, at page 250.

The libel will be dismissed.